**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE: GOLDEN CORRAL DATA BREACH LITIGATION** | Case No.: 5:24-cv-00123-M-BM |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.      INTRODUCTION

In August of 2023, Defendant Golden Corral Corporation ("Defendant" or "Golden Corral") discovered "an unauthorized actor accessed [Golden Corral's] system and acquired certain data between August 11, 2023 until August 15, 2023" (the "Data Incident"). *See* Plaintiffs' Consolidated Class Action Complaint ("Compl"), ¶ 5 (ECF No. 18). Defendant issued formal notice of the Data Incident[1] in or around February 16, 2024. Compl. ¶ 4. Thereafter, Plaintiffs commenced this class action lawsuit, alleging Defendant failed to sufficiently protect their personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") from unauthorized access and exfiltration. *Id.* ¶ 1.

After months of litigation and hard-fought settlement negotiations, the Parties have reached a settlement that provides substantial benefits to the Settlement Class. Specifically, the Settlement

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as Exhibit A to the Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

1

provides monetary relief for Settlement Class Members that includes: (i) a non-reversionary Settlement Fund of $1,850,000.00; (ii) Compensation for Unreimbursed Economic Losses up to a total of $10,000 per person; and (iii) a Pro Rata Cash Payment. SA, ¶ 59. In addition, Defendant has confirmed the implementation of certain security upgrades, which are specifically designed to protect the Settlement Class Members' Private Information still in possession of Defendant. SA, ¶ 74. This is an outstanding result for Plaintiffs and the Settlement Class considering the challenges faced and the risks of protracted litigation.

As further discussed below, the Settlement falls within the range of judicial approval and includes a comprehensive notice plan. As such, preliminary approval of the proposed class action settlement is warranted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a restaurant chain specializing in a buffet dining experience with nearly 400 company-operated and franchise restaurants located in 42 states and serves approximately three million guests per week. Compl. ¶ 27. Further, according to Defendant, it provides jobs to approximately 25,000 individuals. *Id*. ¶ 28. In the ordinary course of providing employment, Defendant collects and requires its current or former employees to provide Defendant with their sensitive Private Information. *Id*. ¶ 8. Between August 11, 2023, and August 15, 2023, an unauthorized third-party acquired Plaintiffs' and Class Members' Private Information in a data breach that impacted Defendant's computer systems and caused a temporary disruption to its corporate operations. *Id*. ¶¶ 40, 41. In or around February 16, 2024, Defendant began to issue formal notice of the Data Incident to Plaintiffs and the Class. *Id*. ¶ 42.

On February 27, 2024, Plaintiffs Yasmeenah Morrow, Wayland Bennett, and Ashley Hunt filed the first Class Action Complaints against Defendant, alleging Defendant failed to adequately

protect Plaintiffs' and Class Members' Private Information from unauthorized access. *See Yasmeenah Morrow v. Golden Corral,* 5:24-cv-00123-M (E.D.N.C.); *Wayland Bennett v. Golden Corral,* 5:24-cv-00124-FL (E.D.N.C.); *Ashley Hunt v. Golden Corral,* 5:24-cv-00125-D (E.D.N.C.). Next, on February 28, 2024, Plaintiffs Christie Brooks and Carlton Brand filed Class Action Complaints against Defendant, alleging Defendant failed to adequately protect Plaintiffs' and Class Members' Private Information from unauthorized access. *See Christie Brooks v. Golden Corral,* 5:24-cv-00129-D (E.D.N.C.); *Carlton Brand v. Golden Corral,* 5:24-cv-00132-FL (E.D.N.C.). Finally, on March 5, 2024, Plaintiff Mika Inelus filed her Class Action Complaint against Defendant, alleging Defendant failed to adequately protect Plaintiffs' and Class Members' Private Information from unauthorized access. *See Mika Inelus v. Golden Corral*, 5:24-cv-00141-FL (E.D.N.C.). The Court consolidated the above-referenced actions into the first-filed case on May 21, 2024 (ECF No. 14), and on June 20, 2024, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 18), asserting claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, declaratory judgment, and breach of fiduciary duty.

On November 19, 2024, following the exchange of informal discovery, a settlement demand, and detailed mediation briefs, the Parties participated in a day-long mediation with Judge Morton Denlow (Ret.) of JAMS. *See* Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ¶ 4. ("Klinger Decl."). Throughout the mediation, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation and all other factors bearing on the merits of settlement. *Id*. As a result, the Parties reached a settlement in principle and, in the following weeks, negotiated a final mutual agreement on all the necessary documentation and material terms. *Id*.

## III.    THE SETTLEMENT TERMS

The Settlement negotiated on behalf of the Settlement Class establishes a $1,850,000 non-reversionary Settlement Fund, which will be used to pay for: (i) Unreimbursed Economic Losses; (ii) Pro Rata Cash Payments; (iii) Notice and Administrative Expenses; (iv) Service Award payments approved by the Court; and (v) the Fee Award and Expenses awarded by the Court. SA, ¶ 57.

### A.  Definition of the Settlement Class

Plaintiffs request certification, for settlement purposes only, of a nationwide class of approximately 183,272 individuals, defined as follows:

> All individuals impacted by the Data Breach that occurred between August 11, 2023 and August 15, 2023 who were sent a notice of the Data Breach.

SA, ¶ 44. The Settlement explicitly excludes: (i) the judges presiding over this Litigation, and members of their direct families; (ii) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and their current or former officers and directors; and (iii) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*.

### B.  Benefits to the Settlement Class

#### 1.  Compensation for Unreimbursed Economic Losses

Settlement Class Members may submit a claim for compensation of Unreimbursed Economic Losses, not to exceed $10,000.00 per Settlement Class Member. SA, ¶ 59. In order to receive compensation for Unreimbursed Economic Losses, Settlement Class Members must submit a claim and supporting documentation for unreimbursed ordinary and/or extraordinary economic losses incurred as a result of the Data Incident. *Id*. The Settlement Administrator shall be responsible for verifying that each person who submits a Claim Form is a Settlement Class

4

Member. *Id.* The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for unreimbursed ordinary and/or extraordinary economic losses reflect valid unreimbursed economic losses actually incurred that are fairly traceable to the Data Incident but may consult with both Class Counsel and Defendant's Counsel in making individual determinations. *Id.*

### 2. Pro Rata Cash Payments

Settlement Class Members may submit a claim for a pro rata share of the Net Settlement Fund, which will be increased or decreased on a pro rata basis, depending on the number of valid claims and the amount of funds available after payment of Notice and Administrative Expenses, Taxes and Tax-Related Expenses, the Fee Award and Expenses, Service Awards, and payment of Unreimbursed Economic Losses. *Id.* ¶ 58. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. *Id.* ¶ 61. A Settlement Class Member shall not be required to submit any documentation or additional information in support of their claim for a Pro Rata Cash Payment. *Id.* However, the Claim Form must clearly indicate that the Settlement Class Member is electing to claim the Pro Rata Cash Payment in lieu of any other benefits made available under this Settlement Agreement. *Id.*

### 3. Business Practices Changes & Confirmatory Discovery

Defendant's goal in implementing enhanced data security measures is to prevent future data breaches and has also committed to maintaining these improved security measures for a period of two years following the final approval of the Settlement. *Id.* ¶ 74.

### C. Notice Program.

The Parties agreed to use Kroll Settlement Administration LLC "Kroll" as the Settlement Administrator. Within seven (7) days of the Preliminary Approval Order, Defendant shall provide

the Settlement Administrator with the Settlement Class List. *Id*. ¶ 75. Within thirty (30) days after the Preliminary Approval Order is entered, the Settlement Administrator shall disseminate Notice to the Settlement Class Members. *Id*. Notice shall be disseminated via U.S. mail to all Settlement Class Members, to the extent mailing addresses are known. *Id*. To the extent that Class Counsel believes that reminder notices should be sent to Settlement Class Members, Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members, which shall be sent sixty (60) days after the Notice Date and the cost of which shall be Notice and Administrative Expenses that are paid from the Settlement Fund. *Id*.

### D. Claims, Opt-Outs, and Objections.

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object.

#### 1. Claims

Settlement Class Members shall have ninety (90) days after the Notice Date to complete and submit a claim to the Settlement Administrator. *Id*. ¶ 11. To submit an approved claim, Settlement Class Members shall complete and timely submit a Claim Form that has been approved by the Settlement Administrator, which is attached as Exhibit C to the Settlement Agreement. *Id*. ¶ 10.

#### 2. Opt-Outs

Settlement Class Members will have up to and including sixty (60) days after the Notice Date to file a written request to be excluded from the Settlement Class. *Id*. ¶ 32. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by mailing a request for exclusion to the Settlement Administrator postmarked no later

than the Opt-Out Deadline. *Id.* ¶ 77. The request for exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. *Id.*

### 3. Objections

Settlement Class Members shall have up to and including sixty (60) days after the Notice Date to file a written objection to the Settlement. *Id.* ¶ 31. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee and Expense Application by submitting written objections to the Court no later than the Objection Deadline. *Id.* ¶ 79. A written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection and a description of whether the objection applies only to the Settlement Class Member, a subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of any attorneys representing the objector (if any); (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a description and/or copies of evidence that may be introduced at fairness hearing; (vii) a list of proceedings in which the Settlement Class Member has submitted an objection during the past five years; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.*

### E. Attorneys' Fees, Expenses, and Service Award Payments

The Parties did not discuss the amount of Attorneys' Fees and Expenses until after the substantive terms of the Settlement had been agreed upon. Klinger Decl. ¶ 9. Defendant agrees not

7

to oppose Class Counsel's request for an award of attorneys' fees to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund, or $610,500.00. SA. ¶ 95. Further, Defendant agrees not to oppose Class Counsel's request for reimbursement of litigation expenses (exclusive of Administrative Expenses) not to exceed $20,000. *Id*. Class Counsel will also include a request for Service Award Payments for the Settlement Class Representatives not to exceed $2,500 per Representative. *Id*. ¶ 93. The Settlement Class Representatives' Service Award Payments will be paid in recognition of their contributions to this Litigation. *Id*.

### F. Releases

Upon Final Approval of the Settlement Agreement, Settlement Class Members release, acquit, and forever discharge Defendant and its related entities (identified in ¶ 87 of the Settlement Agreement) from all past, present, and future claims and causes of action related to the Data Incident. *Id*. ¶¶ 87-89. However, nothing in this Release is intended to, does or shall be deemed to release any claims not arising out of, based upon, resulting from, or related to the Data Incident. *Id*. ¶ 87. Settlement Class Representatives and Class Counsel acknowledge, and each Participating Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of unknown claims in the Release was separately bargained for and was a key element of the Settlement Agreement. *Id*. ¶ 88.

## IV. ARGUMENT AND AUTHORITIES

### A. Applicable Law

Courts generally follow a two-step analysis when determining whether to approve a class action settlement. First, courts conduct a "a preliminary approval or pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval", or in other words, whether there is "probable cause" to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing

8

*Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980). Next, assuming the Court grants preliminary approval and notice is sent to the class, the Court must conduct a "fairness" hearing where all interested parties are afforded an opportunity to be heard on the proposed settlement. *Id*. The primary purpose of the fairness hearing is to determine whether the proposed settlement is fair, reasonable, and adequate. *Id*.

When deciding a motion for preliminary approval of a class action settlement, a court must first evaluate whether certification of a settlement class is appropriate under the Federal Rules of Civil Procedure ("Rule") 23(a) and (b). *In re NeuStar, Inc. Securities Litig.*, No. 1:14-cv-885, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015). Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Further, Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members", and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

If certification of a settlement class is appropriate, a court then determines if the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Further, the Fourth Circuit instructs district courts to also consider a series of factors to determine whether a proposed settlement is adequate. *See In re Jiffy Lube*

*Securities Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). In assessing the adequacy of and reasonableness of the Settlement, the Court should consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d. at 159.

The preliminary approval process is concerned with determining whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5:15-cv-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("First, the court conducts a preliminary review of the proposed settlement to determine whether it is in within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement."). Ultimately, the Court has discretion on whether to approve a proposed settlement, but "there is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-cv-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011). As such, for the following reasons, the proposed Settlement is fair, reasonable, and adequate, and the Court should grant preliminary approval and permit the issuance of notice to the Settlement Class Members.

## B. The Court Should Preliminarily Certify the Settlement Class

### a. Numerosity

The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is generally a low hurdle and there is no set number of members required to satisfy the numerosity requirement for class certification.

10

*Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*, No. 7:16-cv-28, 2017 WL 396667, at *2 (E.D.N.C. Jan. 27, 2017) (finding numerosity requirement was met for a proposed class consisting of approximately 135 individuals). Here, the Settlement Class consists of approximately 183,272 individuals, thereby satisfying the numerosity requirement.

### b. Commonality

Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). The commonality requirement is liberally construed and "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). In fact, the commonality requirement is met where the Defendant has engaged in a common course of conduct. *Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003); *see also Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) (finding commonality requirement was met where defendants acted in a common way towards the class members). Here, Plaintiffs' claims turn on the adequacy of Defendant's data security in protecting Plaintiffs' and Class Members' Private Information. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for settlement purposes, for all Settlement Class Members at once. Thus, commonality is met.

### c. Typicality

Next, "typicality requires that the claims of the named class representatives be typical of those of the class; a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Leinhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). To satisfy the typicality requirement, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class

members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Generally, to satisfy the typicality requirement, the Court "must determine whether the asserted claims arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Beaulieu v. EQ Indus. Services, Inc.*, No. 5:06-cv-00400-BR, 2009 WL 2208131, at *15 (E.D.N.C. July 22, 2009). "However, as the Fourth Circuit has recognized, the necessity for individual damage determinations does not destroy typicality." *Id*.

Here, the Plaintiffs' claims are aligned with the Settlement Class because they all received a notice letter from Defendant informing them their Private Information was compromised in the Data Incident. Further, the Plaintiffs and Settlement Class Members all had the same type of data compromised in the Data Incident and all received similar communications from Defendant regarding the Data Incident. As a result of the Data Incident, the Plaintiffs and Settlement Class were all impacted by Defendant's allegedly inadequate data security. Thus, typicality is met.

### d. Adequacy

In addition, Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to satisfy the adequacy requirement, Plaintiffs must demonstrate that the class representatives (1) "will vigorously prosecute the interests of the class through qualified counsel" and (2) that they have "common interests with unnamed members of the class." *Beaulieu*, 2009 WL 2208131, at *15 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). "The importance of the adequacy requirement is based on the principle of due process which requires that named plaintiffs possess undivided loyalties to absent class members." *Id*. Here, the Class Representatives have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing

information and documents to Class Counsel to permit investigation and development of the complaints, including a comprehensive Consolidated Complaint; (iv) being available as needed throughout the Litigation; and (v) continuing to monitor the Litigation. Klinger Decl. ¶ 12. Moreover, Class Counsel is adequate because of their vast experience as vigorous data breach class action litigators. *Id*. ¶ 11.

### e. Predominance

Further, pursuant to Rule 23(b)(3), a class action may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement focuses on whether the proposed Settlement Class is "sufficiently cohesive to warrant adjudication by representation", and whether defendant's liability is common enough to be resolved on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). In cases, such as here, "where the same evidence would resolve the question of liability for all class members, common issues of law and fact have been held to predominate." *Beaulieu*, 2009 WL 2208131, at *20. Thus, to satisfy the predominance requirement, the Court must determine that the common questions predominate over individual questions as to liability. *Id*.

Here, as in other data breach cases, common questions predominate because all claims arise from Defendant's alleged failure to adequately safeguard Plaintiffs' and Class Members' Private Information. In fact, the focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312 (N.D. Cal. 2018). All Settlement Class Members had their Private Information compromised in the Data Incident and Defendant's

allegedly defective security measures at issue do not vary from person to person. Therefore, because the claims are based on Defendant's uniform conduct regarding a single Data Incident that affected all Settlement Class Members, the predominance requirement is satisfied.

### f. Superiority

Moreover, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *See Beaulieu*, 2009 WL 2208131, at *22 (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3rd Cir. 2008)).

Here, the individual claims of each Settlement Class Member are too small to warrant prosecuting the cases individually. The technical issues are too complex, expert testimony and document review is too costly, and the individual amounts are insufficient to allow anyone to file and prosecute an individual action—at least not with the aid of competent counsel. Therefore, the Court should certify the Settlement Class for settlement purposes pursuant to Rule 23(b)(3).

### C.  The Proposed Settlement Meets the Standard for Preliminary Approval.

As stated above, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Jiffy Lube* adequacy factors. For the following reasons, the Rule 23(e)(2) and *Jiffy Lube* factors have been satisfied.

### a. Fed. R. Civ. P. 23(e)(2)(A): Plaintiffs and Class Counsel have Adequately Represented the Class.

The first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representatives have adequately represented the Class. Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints, including a comprehensive Consolidated Class Action Complaint (ECF No. 18); conducting informal discovery; participating in a full-day mediation session with Magistrate Judge Morton Denlow (Ret,); preparing thorough mediation briefs detailing each party's respective positions and theories of liability; and negotiating and reaching a Settlement at arm's length, in good faith, and without collusion. Klinger Decl. ¶ 7. Additionally, the Settlement Class Representatives have also demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the Litigation, including for depositions; and (v) monitoring the Litigation. *Id.* ¶ 12.

### b. Fed. R. Civ. P. 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

There is a strong presumption of fairness that attaches to a proposed settlement where "the settlement is reached through arm's length bargaining…[and] investigation and discovery are sufficient to allow counsel and the court to act intelligently…." *Brunson v. Louisiana-Pacific Corp.*, 818 F.Supp.2d 922, 927 (D.S.C. 2011) (citing Newberg & Conte, Newberg on Class Actions (3d ed. 1992) § 11.41.). The Parties' proposed settlement is the result of intensive, arm's-length negotiations through a neutral third-party mediator, and between experienced attorneys who are familiar with data breach class action litigation and with the legal and factual issues in these

cases. Klinger Decl., ¶ 5. Before discussing a potential settlement, the Parties completed and engaged in meaningful informal discovery. *Id*. ¶ 4. This allowed the Parties to adequately understand the claims, defenses, and risks of continued litigation. *Id*. ¶ 8. The Settlement is the result of prolonged and serious arms' length negotiations through a full-day mediation session between counsel for the Parties, who fought hard for the interests of their respective clients. *Id*. ¶ 5. As part of the mediation process, the Parties also exchanged and provided the mediator with detailed mediation briefs outlining the strengths and weaknesses of their claims and defenses and engaged in meaningful informal discovery. *Id*. ¶ 4. The fact that the Settlement was achieved through well-informed, and arm's-length neutrally supervised negotiations weighs in favor of granting preliminary approval.

### c. Fed. R. Civ. P. 23(e)(2)(C): The Relief Provided to the Class is Adequate.

To determine whether the relief to the Settlement Class is adequate, the Court also takes into account: (i) the costs, risk, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Fed. R. Civ. P. 23(e)(3).

### i. The costs, risk, and delay of trial and appeal.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. This case will take years to litigate with briefing and arguing of dispositive motions; engaging in voluminous discovery; participating in additional mediation sessions; and months of continued settlement negotiations. Klinger Decl. ¶ 11. Further, given the complexity of the claims and arguments here, a lengthy trial would follow. Thus, the extensive risk of prolonged litigation here favors preliminary approval.

16

Further, while Plaintiffs are confident in their claims, data breach class actions are notoriously risky cases. For example, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc*., No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases…are particularly risky, expensive, and complex."). Further, maintaining class certification through trial is another over-arching risk emphasizing what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs. Thus, the costs, risks, and delay of continued litigation are great, and weigh heavily in favor of preliminary approval.

### ii. The effectiveness of distributing notice to the Class.

The method of distributing the settlement benefits to the Settlement Class Members will be equitable and efficient. As explained above, all Settlement Class Members are eligible to make a claim for Compensation for Unreimbursed Economic Losses and a Pro Rata Cash Payment. SA, ¶ 59. The task of validating those claims will be delegated to the Settlement Administrator, Kroll, a neutral party which has significant experience processing these claims in similar cases. Additionally, the Claim Period will be sufficiently long to enable all eligible Settlement Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective.

### iii. The terms of any proposed award of attorney's fees.

Class Counsel will request no more than one-third (33.33%) of the Settlement Fund in attorneys' fees, or $610,500, and up to $20,000 in expenses to be paid from the Settlement Fund, which are both subject to Court approval. SA, ¶ 95. The award of attorneys' fees and costs were negotiated after the total amount of the Settlement Fund was established and will be paid from the non-reversionary Settlement Fund. *Id*; Klinger Decl. ¶ 9.

### iv. Any agreement required to be identified under Fed. R. Civ. P. 23(e)(3).

The Parties have not reached any other agreements affecting the settlement of this lawsuit other than the Settlement Agreement before the Court.

### d. Fed. R. Civ. P. 23(e)(2)(D): The Parties' Proposed Settlement Treats Settlement Class Members Equally.

The Parties' proposed settlement treats the Settlement Class Members equitably relative to each other. Here, all Settlement Class Members had their Private Information compromised in the Data Incident, and all will have the same remedy and equal opportunity to claim the benefits of the Parties' proposed settlement.

### e. The Relative Strength of the Plaintiffs' Case on the Merits and the Existence of any Difficulties of Proof or Strong Defenses the Plaintiffs are Likely to Encounter if the Case Goes to Trial.

Although a court is not to decide the merits of the case when reviewing the adequacy of a proposed settlement, the court can assess the relative strengths and weaknesses of the settling parties' positions. *Case v. French Quarter III LLC*, Nos. 9:12-cv-02804-DCN, No. 2:12-cv-02518-DCN, 2015 WL 12851717, at *8 (D.S.C. July 27, 2015). As stated above, although the Plaintiffs are confident in the strength of their allegations and supporting evidence, Plaintiffs' ability to prevail on the merits is uncertain. Here, Defendant may assert a number of case dispositive

defenses and Plaintiffs will face challenges, such as surviving a likely motion to dismiss, motion for summary judgment, and securing and maintaining class certification. The Parties' proposed settlement allows the Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting years—and eliminates the possibility that the Class Members receive no benefit. Therefore, considering the risks Plaintiffs face going forward, the relief provided by the Parties' proposed settlement is well balanced against the hurdles Plaintiffs will have to overcome to successfully litigate this case.

### f. The Anticipated Duration and Expenses of Additional Litigation.

The costs, complexity, length, and expense of further litigation favors the Parties' proposed Settlement. While the Parties have conducted informal discovery for settlement purposes, in the event litigation proceeds, the Parties would need to engage in further and significant formal discovery. The Parties would require experts, and the costs of testifying experts addressing the economic harm caused to consumers would be substantial. Further, continued litigation would surely involve motions to dismiss, motions for summary judgment, a motion for class certification, and appeals, which would all cause a delay in final resolution. Therefore, this factor weighs in favor of preliminary approval.

### g. The Solvency of Defendant and the Likelihood of Recovery on a Litigated Judgment.

Defendant's solvency is not an issue, and it can likely withstand a judgment in an amount larger than the Settlement amount. However, the risks and costs associated with continuing litigation, including the potential depletion of available insurance coverage, combined with the immediate benefits to the Settlement Class, easily outweighs this factor.

### h. Degree of Opposition to the Settlement.

At the current stage of the litigation, prior to the dissemination of the class notice, no Settlement Class Members, including the named Plaintiffs, have indicated any objections to the proposed Settlement. Class Counsel will revisit this issue at the fairness hearing, to the extent necessary.

### D. Notice Plan

No later than seven (7) days after the entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Settlement Class List, which includes a list of each Settlement Class Member's full name, current or last known residential mailing address, and all known email addresses. SA, ¶¶ 45, 75. Within thirty (30) days after the Preliminary Approval Order is entered, the Settlement Administrator shall disseminate Notice to the Settlement Class via U.S. mail to all Settlement Class Members with valid mailing addresses. *Id*. ¶ 75. In addition, the Settlement Administrator shall create and maintain a Settlement Website, which shall contain information about the Settlement, including: (i) the Short Form Notice; (ii) the Long Form Notice; (iii) the Claim Form; (iv) the Proposed Preliminary Approval Order; (v) the Proposed Final Order and Judgment; (vi) this Settlement Agreement; and (vii) all other Court documents related to the Settlement. *Id*. ¶ 49. To the extent that Class Counsel believes that reminder notices should be sent to Settlement Class Members, Class Counsel may direct the Settlement Administrator to send reminder notices to the Settlement Class Members sixty (60) days after the Notice Date. *Id*. Further, the notice materials agreed upon by the Parties are plain and easy to understand, including clear directions explaining the procedure and deadlines for Settlement Class Members to opt-out or object to the Settlement. *Id*. (Exs. A-C). Therefore, the Notice Plan satisfies the requirements of Rule 23(e)(1).

Finally, the Court should approve Kroll as the Settlement Administrator. Kroll is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. The Parties selected Kroll after considering bids from multiple administration firms and believe that Kroll will be able to meet the obligations imposed on the Settlement Administrator for a reasonable cost. *See* Klinger Decl. ¶ 10.

## V.      CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for purposes of the Parties' proposed Settlement; (2) preliminarily approve the Parties' proposed Settlement as set forth in the Settlement Agreement; (3) approve the form and manner of notice of the Parties' proposed settlement to the Settlement Class; and (4) set a hearing data for final approval of the Parties' proposed settlement.

Dated: January 17, 2025

<div style="margin-left:40%;">

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Fax: 865-522-0049
gklinger@milberg.com

***Interim Lead Class Counsel***

Samuel J. Strauss
Raina C. Borrelli
**Straus Borrelli PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
sam@straussborrelli.com
raina@straussborrelli.com

</div>

21

William B. Federman
Kennedy M. Brian
**Federman & Sherwood**
10205 N. Pennsylvania
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com

Todd S. Garber
**FINKELSTEIN, BLANKINSHIP FREI-
PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

Daniel Srourian
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email:  daniel@slfla.com

*Plaintiffs' Executive Committee*

Scott C. Harris
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003
sharris@milberg.com

*Plaintiffs' Local Counsel*

22

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, I filed the foregoing document with the Court via CM/ECF. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Gary M. Klinger*
Gary M. Klinger

## CERTIFICATE OF COMPLAINCE

I hereby certify that this memorandum complies with the applicable word limit set forth in L.R.(f)(3) and contains 6093 words.

/s/ *Gary M. Klinger*
Gary M. Klinger

23